IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IMG WORLDWIDE, INC., *et al.*, | ) | CASE NO. 1:11 CV 1594 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This matter comes before the Court upon Defendant Westchester Fire Insurance Company's Motion for Summary Judgment. (ECF #33). Plaintiffs filed Objections to the motion, and Defendant filed a Reply in support of its position. (ECF #40, 46). The Court has thoroughly considered the entire record before it and, applying the appropriate standard of review, finds that the motion should be DENIED with regard to coverage and defense obligation, and GRANTED with regard to Plaintiffs' claim for bad faith.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(c). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. It is with these standards in mind that the instant Motions must be decided.

The case was brought to determine whether Defendant is obligated to pay the Plaintiffs for reimbursement of a portion of settlement payment and defense costs they incurred in connection with the lawsuit *Gastaldi, et al v. Sunvest Communities USA, LLC, et al. ("Gastaldi* suit"). The original lawsuit claimed that IMA committed fraud and that they violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). The fraud claims were dismissed prior to trial, and the IMG and IMGA parties settled the FDUTPA claims for a total of $5 million dollars. They claim to have incurred $8 million dollars in defense costs, as well.

IMG's primary insurer, Great Divide Insurance Company ("Great Divide"), originally denied coverage for these same IMG claims. Following a protracted period of negotiation, and after the settlement of the underlying case occurred, Great Divide agreed to pay its policy limits and a portion of the defense costs.[1] Defendant, Westchester Fire Insurance Company

---

[1]

Plaintiffs also have a pending Motion to Strike Testimony that contradicts Great Divide Insurance Company's Written Agreement with IMG Worldwide, Inc. And IMG Academies, LLP. (ECF #41). That motion is denied. Plaintiffs contend that in light of their eventual agreement to pay on the claim, Defendants should not be allowed to introduce evidence that the underlying carrier did not believe that the claims were, in fact, valid under the terms of the insurance contract. Plaintiffs rely primarily on the parol evidence rule in support of their motion. The parol evidence rule, however, is not meant to ban a third party from challenging the validity or veracity of the facts underlying an agreement between two other parties. It is true that the parties to the original agreement

("Westchester') is an umbrella insurance provider. Westchester denied coverage at the start of the underlying litigation and has not changed its position in this regard.

The underlying claim is for a group of investors' alleged loss of use of tangible property caused by the failure to develop and convert condominiums they bought into a high end development paired with an IMG sports facility. In essence the investors who purchased low end properties based on a belief that they would be upgraded and developed into high end condominiums, seek compensation for the loss of the anticipated increase in value caused by the abandonment of the project, after their investment money had already been paid. These investors claim that they have been deprived of the use of their property by the failure to complete the development, which left them with "un-refurbished residential units in a low-end abandoned moldy bug and rodent infested apartment complex" which have "no market" and are "essentially worthless."

Westchester argues that this does not fit the definition of a loss of use of tangible property, nor does the cause of the alleged damage qualify under the contract language as "an occurrence," which is a prerequisite for coverage. Rather, Westchester contends that the alleged loss is merely a loss of anticipated investment value, caused by a failure to complete the development, which is an attempt to seek coverage for a literal non-occurrence, rather than an "occurrence" as defined by the policy. Westchester argues that the investors have the exact same property they originally bought, in the same condition it was in when it was bought, and no

---

may not introduce evidence contrary to that agreement, to avoid enforcement of a written agreement. It cannot be used, however, to handcuff a third party, not involved or represented in the original agreement, in connection with a separated litigation. *Bowman v. Tax Com. Of Ohio*, 135 Ohio St. 295, 298, 20 N.E.2d 916 (1939), at paragraph one of the syllabus.

accident or other occurrence affected the property in any way. Therefore, they contend there are no covered losses under the contract.[2]

Plaintiffs counter that the investors did suffer a loss of use of their property, because in their undeveloped state the units are utterly without value and cannot be inhabited. Further, Plaintiffs contend that the insolvency of the developer and its decision to abandon the project are occurrences or accidents within the meaning of the policy because they were unintended and unexpected events from Plaintiffs' point of view.

With regard to Defendants alleged obligation to provide defense coverage, there are even more points of disagreement between the parties. Plaintiffs contend that Defendant should have stepped in to pay the defense costs of the underlying litigation at the inception of the suit. Defendants claim that they had no obligation to provide coverage for claims that were not insurable. At the inception of the lawsuit, the claims against Plaintiffs included charges of fraud and civil theft, which Plaintiffs have not disputed would have barred coverage under the policy terms. At a later stage of the litigation, however, these charges were dropped and the only remaining claim against Plaintiffs was the FDUTPA claim. At this point the issue of coverage became a reasonably contested issue.

Plaintiffs also assert that Defendants were contractually bound to "drop down" and defend the case once the primary carrier refused, regardless of the coverage issues, and regardless of whether the primary carrier eventually agreed to pay on the coverage claim. Defendants counter that because the primary carrier eventually paid on the claim, they should

---

[2] Westchester also claims that if coverage were initially plausible for property damage due to an occurrence, that several potential exceptions outlined in the insurance contract would still preclude coverage. Plaintiffs disagree that any exclusions would apply.

have paid the costs of defense, and Defendants, had no contractual obligation to provide coverage for claims that were or should have been covered by the primary insurance carrier.

The factual context of the case is somewhat complicated by the fact that although the Plaintiffs paid out $5 million to settle the FDUTPA claims, they were not contractually obligated to the *Gastaldi* plaintiffs under any theory of Florida law. The IMG Plaintiffs did not contract with any of the investors; the IMG Plaintiffs did not have any agreement to be responsible financially for the development; and, the IMG Plaintiffs did not agree to do the development work. Rather the IMG Plaintiffs contracted with the developer to provide consulting services with regard to the future development of a sports complex connected to the condominium development, and to allow the IMG name to be used in connection with that anticipated sports complex. The IMG Plaintiffs did participate in the marketing of the proposed development, and did identify themselves publically as partners of the developer, which left them exposed to a potential violation of the FDUTPA. The *Gastaldi* court, however, specifically ruled that Plaintiffs could not be held vicariously liable under any purported partnership legal theories available under Florida law, for the actions or omissions of the other Defendants in the underlying case.

Based upon a thorough review of the briefs submitted by the parties, as well as the materials submitted in support thereof, the Court finds that both parties have established that there is some evidence to support their respective positions in this lawsuit, and that neither party has been unreasonable in maintaining its position with respect to coverage under the contract terms. Therefore, there are genuine factual issues relating to the coverage and defense issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party. Further, because there could reasonably be a finding for either party based on the facts presented on the coverage and defense issues, and because Plaintiffs have provided no evidence that would support a finding of bad faith on the part of Defendants, the claim for bad faith must be dismissed. Accordingly, Defendant's Motion for Summary Judgment (ECF #33), is DENIED as to coverage and defense issues, and GRANTED as to the claim of bad faith. Plaintiff's request for Summary Judgment, as stated in the conclusion of its Memorandum of Law in Opposition to Westchester's Motion for Summary Judgment is DENIED, as is Plaintiffs' Motion to Strike Testimony that contradicts Great Divide Insurance Company's Written Agreement with IMG Worldwide, Inc. And IMG Academies, LLP. (ECF #40, 41) . This case shall proceed to jury trial at 8:30 a.m. on January 8, 2013. IT IS SO ORDERED.

      /s/ Donald C. Nugent
    DONALD C. NUGENT
    United States District Judge

DATED: October 3, 2012