IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| IMG WORLDWIDE, INC., *et al.*, | ) | CASE NO.  1:11 CV 1594 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |


This matter is before the Court on Defendant and Third-Party Plaintiff, Westchester Fire

Insurance Company's Motion for Partial Summary Judgment (ECF #200), and the Motion of

Great Divide Insurance Company For Summary Judgment (ECF # 202).  Both motions have

been fully briefed and are ready for disposition.


**Procedural and Factual History**

This case was originally brought to determine whether the Defendant, Westchester Fire

Insurance Company ("Westchester"), an excess insurance carrier, was obligated to reimburse the

Plaintiffs, IMG Worldwide, Inc. and IMG Academies, LLP (collectively "IMG") for a nearly $5,000,000.00 settlement payment they made, and $8,246,655.57 in defense costs they incurred, in connection with the lawsuit *Gastaldi, et al v. Sunvest Communities USA, LLC, et al.,* Case No. 08-62076-CIV (S.D. Fla., Miami 2009)("the *Gastaldi* suit"). IMG's primary insurer, Great Divide Insurance Company ("Great Divide"), originally denied coverage.  However, after the *Gastaldi* settlement was reached and all defense costs had been incurred, Great Divide entered into a settlement agreement with IMG.   Through that settlement, Great Divide agreed to pay $1,250,000.00, exhausting the one million dollar  "Each Occurrence" sub-limit set forth in the 2005/2006 policy for "property damage" caused by an "occurrence," and settling all liability for defense costs associated with the *Gastaldi* action.  (ECF #146 -2).  In exchange, IMG released Great Divide from any further liability under any and all Great Divide policies for any matters relating to the *Gastaldi* matter, including indemnity and defense costs.   (ECF #146-2). Westchester was not a party to this settlement agreement, and continued to deny coverage.  This lawsuit followed, culminating in a jury trial on the question of coverage.

Following trial, the jury returned a verdict in favor of IMG, finding that Westchester was responsible for indemnification of the *Gastaldi* settlement in the amount of $3,900,000.00.[1] (ECF #111).   The Court retained the question of whether Westchester was also liable for reimbursement of IMG's defense costs over and above the $250,000.00 contributed by Great

---

[1] This amount equals the cost of the *Gastaldi* settlement amount minus the $1,000,000.00 paid by Great Divide pursuant to their settlement agreement with IMG, and a $250,000.00 deductible IMG owed under the Great Divide policy.

Divide in its settlement with IMG.  The Court found that the 2007/2008 policy applied.[2]

> The 2007/2008 policy provides that Westchester
>
> will have the right and duty to defend the insured against any "suit" seeking
> damages for ... "property damage" when the "underlying insurance" does not
> provide coverage or the limits of "underlying insurance" have been exhausted.

(ECF #33-3 at 9).   Based on this language, this Court found that Westchester was not liable for

defense costs.

Both sides appealed the judgment.  In a mandate issued on September 5, 2014, the Court

of Appeals affirmed the judgment as to the jury's finding of liability, reversed this Court's

determination that Westchester did not owe a duty to pay the defense costs, and remanded the

case for consideration of Westchester's third-party claim against Great Divide.  In doing so, the

Court of Appeals found the phrase "does not provide coverage" in the 2007/2008 policy could be

read as either "provide for" coverage, or "undertakes to deliver" coverage, and was, therefore,

ambiguous.  (ECF #169).   Based on this perceived ambiguity, the Court of Appeals read the

contract in favor of the insured and against Westchester, who was the drafter of the language.

The Court of Appeals determined that "does not provide coverage" should be read as "does not

undertake to deliver" coverage.  (ECF # 169).  This definition of the phrase "does not provide

coverage," however, ignored and/or discounted clarifying language contained in the "Other

---

[2]

  The fact that Great Divide's settlement cites its 2005/2006 policy as the applicable policy
and the Court found the 2007-2008 Westchester policy to be the applicable policy does
not change the analysis in any way.  Because IMG settled with Great Divide and released
it from any further liability under any and all policies (including the 2007/2008 Great
Divide policy) all Great Divide policies shall be treated as exhausted under the settlement
agreement.  *See, GenCorp, Inc. v. AIU Insurance Co.*, 297 F. Supp. 2d 995, 1007 (ND
Ohio 2003)(having settled as to all primary policies and as to all policy years the insured
cannot now "allocate its liability to one policy or to one policy year.").

-3-

Insurance" section of the policy.

Under the more specific provisions of the "Other Insurance" section,[3] any potential ambiguity in the phrase "does not provide coverage" is removed.  The contract clarifies that Westchester has no duty to defend when the policy is issued as excess insurance, as it was in this case, and the primary insurer has a duty to defend, as they did in this case.  This section of the policy confirms that Westchester's insurance is "excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis ...."  In addition, the policy specifically states that

> [w]hen this insurance is excess, *we will have no duty* ... to defend the insured against any "suit" *if any other insurer has a duty to defend* the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(ECF #33-3 at 19)(emphasis added).  Despite this language, the Court of Appeals held that Westchester had a duty to provide defense coverage and held that the phrase "we will be entitled to the insured's rights against all those other insurers" did not create a limiting condition to Westchester's promise to cover defense costs.

The Court of Appeals held that the statement "we will be entitled to the insured's rights against all other insurers" did not create a condition precedent to Westchester's promise to provide defense costs, "if no other insurer defends."  (ECF #169, pg. 14).   However, the Court of

 Appeals did not even address the other limitation set forth in this section: "When this insurance is excess, we will have **no duty**... to defend the insured against any 'suit' if any other insurer has

---

[3] Specialized definitions provided in the policy govern notwithstanding their ordinary meaning. *United Nat'l Ins. Co. v. SST Fitness Corp*., 182 F.3d 447, 450 (6th Cir. 1999).

-4-

a duty to defend the insured against that 'suit.'"  This Court is still convinced that this plain

language in the policy eliminates any ambiguity as to when Westchester owed a duty to provide

defense coverage by clarifying that when a primary or other insurance policy "has a duty to

defend," Westchester owes no duty.  This provision clarifies the meaning of when another

insurer "does not provide coverage" in essence defining this phrase as when another insurer

"does not have a duty to defend," or as between the choices considered by the Court of Appeals

"does not provide *for* coverage."  In this Court's opinion, reading all parts of the contract

language in conjunction, as we are required to do,[4] precludes a finding that Westchester owed a

duty to defend IMG because the Westchester insurance was without question "excess insurance"

to the Great Divide policy, and the primary carrier, Great Divide had a duty to defend against the

suit.

Great Divide's duty to defend is evidenced by both the language of the settlement

agreement between Great Divide and IMG,[5] and the jury verdict finding that coverage was

---

[4]

   "We review policy terms in the context of the whole policy so as to read the policy terms
in harmony."  *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 677 (6th
Cir. 2011), citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention
Facilities Auth.*, 78 Ohio St. 3d 353, 1997 Ohio 202, 678 N.E.2d 519, 526 (Ohio 1997);
see also *Stith v. Milwaukee Guardian Ins., Inc.*, 44 Ohio App. 3d 147, 541 N.E.2d 1071,
1072 (Ohio Ct. App. 1988) (explaining that "such construction must be given as will
harmonize and give effect to all its provisions, and that no provision is to be wholly
disregarded as inconsistent with other provisions unless no other reasonable construction
is possible.").

[5]

Although Great Divide stated that it did not admit liability in the Settlement Agreement,
the Agreement did acknowledge that the *Gastaldi* settlement included "payment of sums
that IMGA became legally obligated to pay," and that the Agreement exhausted the Great
Divide policy "due to a payment for 'property damage' caused by an 'occurrence' under
the Policy."  (ECF #146-2 at 1, 3).  Further, in *Elliott Co. v. Liberty Mut. Ins. Co.*, 434 F.
Supp. 2d 483, 499-500 (N.D. Ohio 2006), the Court found that an insurer/insured's

warranted under the nearly identical coverage language contained in Westchester's policy. Further, IMG has repeatedly argued to this Court that the Great Divide settlement constituted a coverage determination by Great Divide and that Great Divide, through the settlement, acknowledged coverage of the *Gastaldi* settlement costs. (ECF #28-1 at 22-23; ECF #40 at 14, 17; ECF #71 at 1-4; ECF #76 at 9-10).[6] Therefore, this Court originally found that Westchester, under the language of its contract, had no absolute duty to defend against the suit. (ECF #153, pg. 24). However, without addressing this specific clarifying language or its effect on Westchester's duty to provide a defense, the Sixth Circuit held that Westchester was obligated to provide coverage, and we are now bound by that decision.

While disavowing any obligation to pay for IMG's defense, Westchester did make a promise to provide coverage if no other insurer stepped in to defend <u>but</u> made absolutely clear in the policy that it would then be entitled to IMG's rights to recover those costs from the primary insurer. The Sixth Circuit held that this language (" but we will be entitled to the insured's rights against all those other insurers") did not create a "condition" or "condition precedent" to Westchester's provision of defense coverage, even in its role as an excess carrier. (ECF # 169, pg. 14). The Court of Appeals came to this conclusion even though it conceded that if Westchester had provided the coverage when IMG first requested it, Westchester would have

---

agreement that policy limits were exhausted is presumptive evidence, if not conclusive evidence, that there was coverage under the settled policy.

[6] In addition, Westchester filed a Statement of Undisputed Facts that states Great Divide "was in breach of its obligation to defend IMG with respect to the *Gastaldi* Action at all relevant times prior to entering into the IMG-Great Divide Settlement Agreement." (ECF #201 at 3). Great Divide did not sign the statement though, so it is unclear whether they have truly stipulated to the breach.

been entitled to subrogation rights against Great Divide.  (ECF #169, pg. 15).  This admission, paired with the ultimate assessment of nearly $8,000,000.00 in defense costs against Westchester would seem to prove the prejudice required under *Ferrando* to establish the conditional aspect of Westchester's subrogation rights under Ohio law.  *See, Ferrando v. Auto-Owners Mutual Insurance Co.*, 98 Ohio St.3d 186, 207, 781 N.E.2d 927, 946 (Ohio 2002)("when an insurer's denial of . . . coverage is premised on the insured's breach of [a]. . . subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights.  An insured's breach of such provision is presumed prejudicial to the insurer absent evidence the contrary."); *Paterek v. Peterson & Ibold*, 118 Ohio St.3d 503, 890 N.E. 2d 316 (Ohio 2008); *Triplett v. Nationwide Mutual Fire Ins*. Co., 2003 Ohio App. LEXIS 3993 (Ohio Ct. App. 2003).[7]

Further, the Court of Appeals recognized that "Westchester did not anticipate the risk of funding IMG's defense costs without the possibility of reimbursement from Great Divide." (ECF #169, pg. 15).  Nonetheless, it found that Westchester had a contractual obligation to provide coverage and that this was enforceable even after IMG destroyed any subrogation rights Westchester may have had against Great Divide.  This ruling effectively and significantly altered the level of risk both parties bargained for in their contract, and created an obligation enforceable

---

[7]

These cases generally involved subrogation clauses allowing an insurance company to pursue a tortfeasor in the event they had to provide coverage for an injury to the insured. In this case Great Divide is analogous to the tortfeasor.  Westchester's policy provided coverage for the liabilities owed by Great Divide to IMG in case Great Divide didn't pay, much as another policy might provide coverage for the liabilities owed by a tortfeasor in the event the tortfeasor could not or would not pay.  It does not make the insurer liable for the harm, but provides secondary, or legally imposed liability, with a right of recovery from the actual entity who caused the harm.

-7-

against Westchester that even the Court of Appeals conceded was not contemplated or bargained for when the parties entered into the contract.

Finally, although the Court of Appeals indicated that we must look at Westchester's liability as of the date they denied coverage, and not following IMG's settlement with Great Divide, there can be no question that had Great Divide paid the full defense costs before there had been any coverage determination against Westchester, IMG could not have recovered defense costs against Westchester, regardless of whether they should have stepped up at the start. There is possibly an argument to be made that Westchester could be liable to IMG for any out of pocket costs it incurred due to Westchester's prior failure to step up and pay for the defense (i.e. the cost of lost interest on the money fronted by IMG for its own defense).  However, once Great Divide paid its obligations, and/or IMG released it from its obligations, IMG no longer had any defense costs to recover.  Therefore, even if Westchester was assessed a breach for failing to step up and front the costs, once those costs were recovered or released, there were no longer any damages attributable to that breach.

The Court of Appeals reasoned that although neither Westchester nor IMG bargained for this level of risk, IMG as the "non-breaching" party "must not be left holding the bag."  (ECF #169, pg. 15).  This Court respectfully disagrees with this characterization of IMG as a "non-breaching" party and consequently a victim in this case.  IMG, throughout these events, had every right and ability to protect its own interests and force both Great Divide and Westchester to trial.  However, IMG,  recognizing that it faced some risk at trial because this was not a clear coverage case, decided to hedge its bets and settle with its primary insurer so that it was guaranteed at least some recovery.  Further, it accepted the $1,250,000.00 payment as full

-8-

payment of any liabilities owed by Great Divide.  As the entire amount of the defense cost was attributable to Great Divide under the terms of both insurance contracts, this should have extinguished IMG's right to recover defense costs under either policy, especially where Westchester's policy included a subrogation provision.  *See, e.g.*, *Snider v. Nationwide*, 2009-Ohio-1026; 2009 Ohio App. LEXIS 897 (Ohio Ct. App. 2009)(because insured settled claim with liable party, their insurance claim was extinguished, and, any insurance payment would have been set-off under subrogation and trust provisions); *Triplett v. Rosen*, Nos. 92AP-816, 92AP-817, 1992 Ohio App. LEXIS 6787, 1992 WL 394867 (Ohio Ct. App. Dec. 29, 1992)(when an insurer settles with a policyholder, even if it is for less than policy coverage, the policy is considered exhausted).  Because Great Divide's policy included full coverage of all defense costs incurred in the *Gastaldi* action, IMG's settlement with Great Divide should have extinguished IMG's right to recover for those costs.[8]

At the time IMG settled with Great Divide, it knew full well the potential value of its case and risks involved in taking it to trial.  It made a reasoned business decision to take the policy coverage limits of $1,000,000.00 and to accept $250,000.00 in defense costs knowing it may never recover anything more. At that time, both IMG and Great Divide knew that if coverage was determined, Great Divide could be on the hook for the full $8,246,655.57 in defense costs, and IMG accepted the risk that it may not recover the remaining defense costs. IMG bargained for the $7,996,655.57 loss of defense costs in exchange for a guaranteed

---

[8]

 Defense costs should not be treated any differently than indemnity coverage under these circumstances.  An excess carrier is not liable for the indemnity coverage owed by a primary carrier even if the primary settles for a lesser payment because the primary policy is considered exhausted as if full value of the policy had been paid.

$1,250,000.00 in its pocket.  In doing so, it released Great Divide from any further obligation regardless of the outcome of the trial against Westchester.  IMG was not acting as a victim, it was acting as any other rational business acts when entering into a settlement agreement; it hedged its bets guaranteeing some recovery when faced with a risk of no recovery.   Both IMG and Great Divide understood the risk they took in making the settlement, understood their potential obligations, potential risks, and potential for recovery.

The Court of Appeals argues that holding IMG to its settlement terms with Great Divide would somehow constitute a risk to the well-accepted policy favoring settlement of insurance disputes.  However, the policy of favoring settlements cannot be denigrated by simply asking the parties to accept the consequences of their agreements. As set forth above, IMG knew the risk it would take if it pursued Great Divide to trial and lost, and, as with any other settlement between businesses, weighed that against what it was guaranteed to gain through the settlement.  It is not as if IMG did not know or should not have known at the time the settlement was reached that Great Divide would have been liable for the full $8,246,655.57  in defense costs if coverage had been established.[9]   Holding IMG to its agreement and the calculated risk it represents does not "provide perverse incentives" that would "encourage insurers to disclaim their duties to defend." It does, however, place the risk of settlement squarely between the settling parties, without

---

[9]

Had Great Divide paid its liability limits before the end of the *Gastaldi* lawsuit, and additional defense costs had been incurred after that payment, these would have been the primary responsibility of the excess carrier, Westchester.   However, IMG settled with Great Divide for the policy limits plus $250,000.00 in defense costs, after all defense costs in the *Gastaldi* lawsuit had already been incurred.  Therefore, Great Divide's duty to defend and/or to cover the cost of defense did not expire until the settlement was finalized. There were, therefore, no additional defense costs incurred that were the primary responsibility of Westchester, the excess carrier.

-10-

impacting non-parties to the agreement, as it should.[10]

In the end, while it is true that IMG and Great Divide should not be penalized for settling, it is also true that Westchester should not be penalized for pursuing its right to challenge coverage in good faith.  A policy promoting settlement cannot be confused with supporting the practice of forcing settlement on unwilling parties, which could be the result if excess carriers will forever be at risk of bearing defense costs otherwise attributable to a settling primary insurer.  *See, Fulli v. Fan*, 79 Ohio St. 3d 374, 376,  683 N.E.2d 337, 338 (Ohio 1997)("Where possible, it is generally within the discretion of the trial judge to promote and encourage settlements to prevent litigation.  A trial judge cannot, however, force parties into settlement.").

Further, even if it were true that Westchester owed a duty to defend that was not conditioned on maintenance of its subrogation rights to recover from the primary insurer, IMG still had a contractual obligation under its contract with Westchester to preserve those subrogation rights.  "In Ohio, the right of subrogation is recognized by statute and by the courts. It does not depend upon whether the insurer will be successful in exercising the right." (*Ferrando*, 98 Ohio St. 3d at 212, Justice Stratton dissenting (citing *Bogan v. Progressive Cas. Ins Co.*, 36 Ohio St.3d 22, 521 N.E.2d 447 (Ohio 1988)(overruled, in part, on other grounds by *Ferrando*).  An insurer's right of subrogation is "a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection." *Bogan*, 36 Ohio St.3d at 31(overruled, in part, on other grounds by *Ferrando*).  By

---

[10]  A settlement agreement is a contract between parties, and is subject to the rules of contract.  *See, Fulli v. Fan*, 79 Ohio St. 3d 374, 377,  683 N.E.2d 337, 340 (Ohio 1997).  A contract between two parties cannot be held to negatively alter the rights of a non-party to the contract.

the time Westchester's liability for a breach of contract was legally established, IMG had also breached its obligations under the policy language and a set-off should have been allowed as a possible cure to IMG's breach. Westchester filed a Motion for Declaratory Judgment with Respect to Reimbursement from Great Divide or in the Alternative a Set-off Based on the Settlement Agreement Between Great Divide and IMG (ECF #136), which this Court denied as moot because it had found no contractual obligation to pay the defense costs.   Despite this Court's failure to rule on the issue, and despite the remand order encouraging this Court to review possible equitable claims Westchester might have against Great Divide, the Court of Appeals summarily ruled on the set-off issue in favor of IMG.  Noting Westchester's argument, without disputing it, that the defense costs should have been set-off entirely "since Great Divide was contractually obligated to pay for the full amount of IMG's defense costs, and IMG released them from that obligation," the Court of Appeals simply stated "there is no legal basis to obtain a set-off under these circumstances, and we find that applying a credit or set-off would not be appropriate under the circumstances of this case."   (ECF #169).

This is a conclusion that this Court disputes. Federal courts in Ohio, and other state courts have found that an insured may not shift the risk of settling for a reduced amount with the primary carrier to either the settling party or to the excess carrier.  *See, One Beacon America Ins. Co. v. American Motorist Ins. Co.*, 679 F.3d 456 (6th Cir. 2012)("Normally... the reviewing court may reduce the amount of the underlying verdict to reflect settlement credits because both the decision against the excess carrier and the action for contribution emanate from the same litigation."); *Bondex Int'l Inc. v. Hartford Acc. And Indemn. Co.*, 2007 WL 405938, *4-5 (N.D. Ohio, Feb. 1, 2007)(finding non-settling insurers were entitled to seek settlement credits from the

-12-

insured so that the policyholder does not receive a windfall and the non-settling insurers are not

liable for more than their contracted for liability); *GenCorp, Inc. V. AIU Ins. Co.*, 297 F. Supp.

2d 995, 1007 (N.D. Ohio 2003), aff'd 138 Fed. Appx. 732 (6th Cir. 2005)(finding Ohio public

policy would not bar granting settlement credits to non-settling insurers)[5]; *Koppers Co., Inc. V.

Aetna Casualty & Surety Co.*, 98 F.3d 1440, 1452, 1454 (3d Cir. 1996)(to ensure an equitable

result, the court "must either (1) reduce the judgment to account for the settling insurers'

apportioned share of liability, or (2) permit the non-settling insurers to seek contribution from

the settling insurers and, in turn, permit the settling insurers to seek reimbursement from [the

plaintiff]...it is the insured, rather than the excess insurer, that must make up the loss between the

settlement amount and the underlying policy limit."); *E.R. Squibb & Sons, Inc. v. Lloyd's &

Cos.*, 241 F.3d 154, 172-173 (2d Cir. 2001)(the court "treated the settling insurers' portions as

satisfied by the settlements, regardless of the actual settlement amount ... as regards the Excess

Insurers their obligations were exactly as if there had been no settlements"... "the settling parties

are the ones who took the risk of the settlement, and the non-settling parties are left precisely as

they would have been had no settlement occurred.").  In addition, a Court may take a settlement

agreement with a third party primary insurer into account when determining how to calculate the

---

[5]

 In *GenCorp*, when dismissing the excess carrier's claims for contribution against the
settling primary insurers, the court held that when a settlement with a primary insurer
extinguishes all claims against primary, it exhausts the primary insurance and ***an excess
carrier has the same obligation to pay as they would if the primary insurers had paid
the maximum amount covered by the primary policy***.  In that case, this meant that excess
coverage was triggered.  In this case, if the settlement exhausts the primary insurance
coverage as to defense costs, Westchester would have no obligation to pay defense costs
because the primary policy covered the full amount of those costs.  *See, GenCorp, Inc. V.
AIU Ins. Co.*, 297 F. Supp. 2d 995, 1000 (N.D. Ohio 2003), aff'd 138 Fed. Appx. 732 (6th
Cir. 2005)

amount of damages remaining and the amount of coverage owed by an excess carrier, after the excess insurer has been found liable for indemnity on the available admissible evidence. *See Hooters of Augusta v. American Global Ins. Co.,* 272 F.Supp. 2d 1365 (S.D. Ga. 2003), aff'd 157 F.App'x 201 (11th Cir. 2005); *see also, Elliott Co. v. Liberty Mut. Ins. Co.*, 434 F.Supp.2d 483, on reconsideration, 239 F.R.D. 479 (N.D. Ohio 2006).

To be clear, had the Court of Appeals refrained from ruling on the issue of set-off/settlement credits, an issue this Court had not previously determined, this Court would have found under the specific facts of this case, and for the reasons otherwise discussed in this opinion, that Westchester was entitled to a settlement credit or a set-off of its obligation to front defense costs in the full amount of those costs. These reasons include but are not limited to: (1) the fact that there is no dispute Great Divide was primarily responsible for the full amount of defense costs; (2) IMG and Great Divide were the only parties to the settlement agreement and therefore bore the full risk of any potential loss associated with the settlement agreement; (3) the settlement with Great Divide extinguished all claims covered by the primary insurance contract, which, in this case, included the full amount of defense costs; (4) Ohio law states that an insurer is not liable to provide coverage if its subrogation rights in connection with that coverage have been destroyed by the insured through settlement with a third-party or otherwise; (5) even if Westchester breached its duty to front the defense costs, by the time this case went to trial there were no damages left to be recovered for that breach because the defense costs had been satisfied by the settlement agreement with Great Divide; (6) Westchester never bargained for potential liability of bearing all of the defense costs; (7) IMG breached its obligation under its contract with Westchester to preserve Westchester's subrogation rights to recover any defense costs it

-14-

had to pay; and, (7) IMG misrepresented to Great Divide in its settlement agreement that it had not assigned or "purported to assign" to any other entity the right to collect on the liabilities released in that agreement, despite having agreed that Westchester had a subrogation right to collect from Great Divide in the event it had to pay any defense costs covered by the Great Divide policy, and despite repeatedly arguing to this Court that Westchester maintained its right of subrogation even following the settlement.

Nonetheless, the Sixth Circuit remanded the case back to this Court for a revised judgment assessing all defense costs against Westchester, which this Court dutifully if somewhat reluctantly issued.  In doing so it precluded any consideration of set-off or settlement credits and noted that Westchester should be allowed to pursue reimbursement from Great Divide under various equitable claims including equitable contribution and subrogation.[6]  On this basis, this Court allowed Westchester to bring a third-party complaint against Great Divide.  This brings us to the determination now before the Court: Is Great Divide liable to Westchester under any equitable principles for the defense costs Westchester must pay to IMG?

---

[6]

  The Sixth Circuit held that failing to require an excess insurer to pay defense costs to the insured, although the insured settled with the primary insurer liable for all of those costs, would somehow be an affront to the sanctity of the policy promoting settlements. However, that Court leaves open the possibility that the excess insurer could recover directly from the released primary insurer, despite its attempts to limit liability through the settlement with the insured.  This would create a legal environment that is far less conducive to settlements than enforcing the agreement against the insured, as it is now highly unlikely that any primary insurer would settle with an insured absent a global agreement including all potential parties.  The Sixth Circuit has allowed for the possibility that  despite settling with the insured, a primary insurer could be liable to a third-party under equitable principles.  *Cf., One Beacon America Ins. Co. v. American Motorist Ins. Co.*, 679 F.3d 456 (6th Cir. 2012); *Bondex Int'l Inc. v. Hartford Acc. and Indemn. Co.*, 2007 WL 405938, *5 (N.D. Ohio, Feb. 1, 2007); *GenCorp, Inc. v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1007 (N.D. Ohio 2003), aff'd 138 Fed. Appx. 732 (6th Cir. 2005).

-15-

**<u>Analysis</u>**

In Westchester's Third-Party action against Great Divide, Westchester seeks reimbursement from Great Divide for the $7,996,655.57, as well as the pre-judgment and post-judgment interest  it has been ordered to pay IMG for defense costs associated with the *Gastaldi* action.  Westchester seeks such reimbursement under the alternate theories of contribution, indemnity, equitable subrogation, and unjust enrichment, or as otherwise allowed under the principles of equity.[7]

Great Divide's leading argument against Westchester's request for equitable relief is that "Ohio law favors the resolution of litigation by compromise and settlement."   This may, in fact, be true.  However, the settlement between IMG and Great Divide can be upheld, as between IMG and Great Divide only, and only absent evidence of collusion or bad faith to the detriment of the non-settling party.  *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 69-70, 567 N.E.2d 1291, 1302 (1991).  That settlement agreement between IMG and Great Divide should not be allowed to eviscerate Westchester's contractual right of subrogation, absent their participation and agreement.[8]

---

[7]

  Westchester also brought a claim for declaratory relief asking this Court to find that if Great Divide had a duty to defend and pay defense costs, then Westchester had no duty to defend or pay such costs.  As set forth above, and in the prior decision finding no duty to defend, this Court agrees with Westchester on this issue.  However, the Court of Appeals' decision overruling the prior finding and issuing specific remand instructions has eliminated any option of finding in favor of Westchester under this theory of relief.

[8]

  Though there is no clear law on this issue to be found in Ohio state cases, several other states have long  held that an insured is not entitled to recover from an insurer if the insurer has subrogation rights that were compromised by the insured via settlement or other

-16-

Further, there is some evidence that the settlement agreement may have been entered into in bad faith, at least on the part of IMG, to the detriment of Westchester, the non-settling party. Both Great Divide and IMG knew or should have known that Westchester was the excess carrier in this case, and at least IMG knew that it had contracted with Westchester to preserve Westchester's right of subrogation against Great Divide in the event Westchester was required to pay any defense costs.  Nonetheless, IMG represented to Great Divide in the settlement agreement that IMG "owns the rights released herein and [IMG] has not assigned or transferred or purported to assign or transfer any of such rights to any other person or entity."[9]  (ECF #146-2, Section 6, subsection a).   A settlement agreement that is made in bad faith, to the detriment of a third-party, is not automatically upheld and equitable relief may be considered.

A.   Equitable Contribution/ Unjust Enrichment

Equitable contribution is inapplicable under the facts of this case.  Westchester was not

agreement with a third party.  *See, e.g., Koppers Co., Inc. v. Aetna Casualty & Surety Co.*, 98 F.3d 1440, 1452, 1454 (3d Cir. 1996*); Maryland Casualty Co. v. Plant*, 208 So. 2d 280 (Fla. Ct. App. 1968); *DeCespedes v. Prudence Mutual Casualty Co.*, 193 So.2d 224 (Fla. 1967); *Carstairs v. Mechanics' Ins. Co.*, 18 F. 473 (Md. Cir. Ct. 1883).  Great Divide cites to several cases that hold an insurer who does not step up to defend the insured cannot be heard to complain when the insured settles the underlying litigation and later seeks indemnification for the settlement.  These cases, however, have no bearing on the settlement between Great Divide and IMG.  Westchester had no duty to defend IMG in any litigation against Great Divide and is not responsible for indemnifying IMG with regard to that settlement.  Westchester has not challenged the amount of the settlement between IMG and *Gastaldi* in the underlying litigation, which is the only relationship addressed by the cases cited, and the only settlement creating an duty of indemnification in Westchester's policy.  *See, e.g., Sanderson v. Ohio Edison Co.*, 1994-Ohio-379, 69 Ohio St.3d 582, 586 (1974).

[9]  The granting of subrogation rights in an insurance contract is an assignment of those rights.  *See, Aetna Casualty & Surety Co., v. Hensgen*, 22 Ohio St. 2d 83.

primarily or even jointly liable for the defense costs under the provisions of its contract with IMG.  The contract between Westchester and IMG provided that Westchester had "no duty" to provide a defense when a primary carrier bore that duty.  There is no dispute that Great Divide, did in fact, bear that duty in this case.  The contract did state that Westchester would cover the costs of defense if the primary refused to do so, but it maintained that the ultimate responsibility for all defense costs which the primary insurer had a duty to provide remained with the primary carrier.  Consequently, if Westchester fronted those costs, under the terms of its contract with IMG,  it was entitled to subrogation of IMG's rights to collect those costs from the primary carrier.

In this case, Great Divide, the primary insurer, was responsible for all defense costs incurred before its policy limits were exhausted; and, all defense costs were incurred prior to the exhaustion of the primary policy.  Therefore, Great Divide was fully responsible for all defense costs incurred in the *Gastaldi* action.  Under the facts of this case Westchester had no duty to absorb the cost of any of IMG's defense, even if it did promise to front those costs until it could recover them through its subrogation rights.    Westchester was not jointly liable, but rather, at most, bore a secondary liability for the costs.  Therefore, theirs is not a claim for contribution, but for indemnity, subrogation, or some other form of equitable relief.  Further, the cases cited by the parties in connection with this issue, *OneBeacon, Bondex* and *GenCorp*, did rule against contribution claims by excess insurers against primary insurers who settled with the insured, and in the case of *OneBeacon*, the court did so even when no set-off or settlement credit had been allowed against the insured.[10]  None of these cases involved insurers who did not bear

---

[10]

The denial of set-off/settlement credits seemed to be questioned by the Court of Appeals in

overlapping or joint liability for coverage, or were only secondarily liable for the coverage at issue.

Unjust enrichment is also not an applicable theory for recover in this instance. Westchester did not confer any benefit upon Great Divide that would support an unjust enrichment claim.  Rather, IMG received the benefit both of the reduced risk and payoff obtained through the settlement agreement, and of the payment of defense costs by Westchester. Therefore, equitable contribution and unjust enrichment do not seem to be appropriate paths of relief under the circumstances of this case.

### B.  Equitable Subrogation

The doctrine of equitable subrogation is largely concerned with "the prevention of frauds and relief against mistakes."  *State v. Jones*, 61 Ohio St.2d 99, 102, 399 N.E.2d 1215 (Ohio 1980).  It creates a subrogation right without any formal assignment of such rights in order to prevent a double recovery by the insured.  *Williams v. Erie Ins. Group*, 86 Ohio App.3d 660, 772 (Ohio Ct. App.  1993).  It does not appear to be the proper mechanism for enforcing a contractual subrogation right that has been eliminated or compromised by the actions of the party who held the original right to recover.  Ohio courts have generally held that neither contractual subrogation rights, nor equitable subrogation rights survive when an insured has released the subrogated rights through a settlement agreement.  *See, e.g., Warmack v. State Auto Insurance Co. v. Arnold*, 195 Ohio App.3d 760, 765 (Ohio Ct. App. 2011).[11]   Therefore, Westchester

_____

that case, although that issue had not been appealed and was not before them.

[11]  As set forth earlier, however, in these cases, courts have held that the insured's right to

cannot recover against Great Divide under a theory of equitable subrogation.

### C. Equitable Indemnity/Other Equitable Relief

The concept of indemnity is understood as the right of a person who has been compelled to pay what another should pay, to obtain complete reimbursement.  *Elkins v. Access-Able, Inc.*, 2004-Ohio- 4101, 2004 Ohio App. LEXIS 3745, *22 (Ohio Ct. App. 2004)(citing *Travelers Indemn. Co. v Trowbridge*, 41 Ohio St. 2d 11, 321 N.E. 2d 787 (Ohio 1975).  It is essentially grounded in the equitable concept of restitution. *Anderson v. Olmsted Utility Equip. Co., Inc.*, 60 Ohio St.3d 124, 131, 573 N.E.2d 626 (Ohio 1991).  The right of an excess insurer to obtain complete reimbursement from a primary insurer may arise under a theory of equitable indemnity when an excess insurer has been compelled to pay what a primary insurer should have paid. Indemnity has been held to be appropriate when a plaintiff who has been held liable "by inference of law" seeks recovery from a defendant who was directly or primarily liable in fact. *See, The Globe Indemnity Co., v Schmitt*, 142 Ohio St. 595, 602, 53 N.E. 2d 790, 793 (Ohio 1944).[12]

_____

coverage is forfeited when the insured destroys the insurer's subrogation right through an unauthorized settlement or by other means.

[12]

  This concept has generally been applied in tort cases, when there is a primary tortfeasor, and another party liable by operation of law, but the reasoning would hold equally true in this context.  However, as set forth above, the reasoning applies equally here.  In this case Great Divide is analogous to the tortfeasor.  Westchester's policy provided coverage for the liabilities owed by Great Divide to IMG in case Great Divide didn't pay, much as another policy might provide coverage for the liabilities owed by a tortfeasor in the event the tortfeasor could not or would not pay.  It does not make the insurer liable for the harm, but provides secondary, or legally imposed liability, with a right of recovery from the actual entity who caused the harm.

Great Divide cites *OneBeacon*, *Bondex*, and *GenCorp* as proof that no Ohio or Federal court applying Ohio law has allowed equitable recovery against a settling primary insurer by an excess carrier.  This overstates the holdings in these cases and ignores the factual distinctions between those cases and the instant action.  *OneBeacon, Bondex* and *GenCorp*, did rule against excess insurers seeking contribution from primary insurers who settled with the insured. Contribution cases involving two insurers with joint or overlapping coverage are, however, treated differently than cases where an insurer with secondary/indirect liability is being held fully liable for the losses attributable to an insurer or other actor with primary/direct liability. None of the cases cited by Great Divide addressed the possibility of equitable indemnification under these circumstances, nor did they contemplate the equities involved when an excess insurer had been order to pay for defense costs fully attributable to the primary carrier.

In addition, all of these cases actually held that an excess carrier should be placed in the same position it would have been absent any settlement between the insured and the primary carrier.  In this case that can only be achieved if Westchester is reimbursed by someone for the defense costs it was assessed.  Although the cited cases balanced the equities by assigning the risk of settlement to the insured, via settlement credits or set-offs benefitting the excess carrier, while allowing the primary insurer to maintain the benefits of their settlement agreement, this option has been inexplicably eliminated by the Court of Appeals in this case.  Therefore, the only way that Westchester can be placed in the same position it would have been in absent the settlement  is if Great Divide is required to reimburse Westchester for the defense costs. Therefore, this Court finds that under the specific circumstances of this case, Westchester is entitled to recover from Great Divide under a theory of equitable indemnity.  When considering

all of the equities, this is now the most equitable outcome achievable in this case.  This Court

acknowledges that this result assesses liability against Great Divide for costs it had been

absolved from paying in its settlement agreement with IMG, which, in and of itself, may be

inequitable.  However, it would be even less equitable to allow this burden to be shifted to

Westchester by means of an agreement to which Westchester was not a party.

Within its settlement with Great Divide, IMG released rights previously assigned to

Westchester without Westchester's knowledge or permission, while representing to Great Divide

that no other party had an interest in the released right of action.  In addition, IMG has

repeatedly argued to this Court and the Court of Appeals, that Westchester maintains the ability

to bring an action against Great Divide, despite the fact that IMG absolved Great Divide of any

responsibility for this payment.[13]  This amounts to nothing more than a purposeful end round of

IMG's agreement with Great Divide and its contractual agreement with Westchester, allowing

IMG to obtain a guaranteed payment from Great Divide without accepting any of the risk of

settlement, and to recover payment from Westchester without providing the corresponding

subrogation rights it promised to them.  If IMG is allowed to profit from the false representations

it made in the settlement agreement, and the avoidance of its contractual representations and

obligations, this will create a situation in which an insured may settle with a primary insurer with

no risk whatsoever to itself, and may simply pass that risk on to an excess insurer who is left

with no recourse whatsoever.

Pursuant to the Court of Appeals decision, however, IMG cannot be held directly

---

[13]

IMG repeatedly argued that Westchester had the right under Ohio law to seek
reimbursement from Great Divide under equitable principles of contribution and
indemnity.  (ECF #40 at 3301; 67 at 3645; 130 at 5015, 5021, 5026.)

accountable for its acceptance of the settlement agreement, or its breach of the subrogation clause in its contract with Westchester.  As between Great Divide and Westchester, which are the only two entities this Court is now allowed to consider, Great Divide had the ultimate duty to pay the defense costs, and Westchester did not.  Further, Great Divide accepted IMG's representations regarding the absence of other interests in the released rights.  Great Divide could easily have determined that Westchester was an excess carrier, and that it held subrogation rights in the event it was held liable for defense costs.  It also could have asked IMG to indemnify it in case of any future contribution or indemnification action by another insurer. Further, to the extent that Great Divide relied on IMG's representations on this issue, and those representations are shown to be false,[14] it also has the right to pursue a remedy for any misrepresentations IMG made to it in the negotiation and execution of the settlement agreement. Either way, this Court finds it to be unacceptable under the principles of equity and fairness to allow a settlement with a primary insurer who is wholly responsible for defense costs to effectively re-assign those costs to an excess carrier who did not contract for that risk and did not agree to bear ultimate or primary  liability for those costs.

CONCLUSION

For all of the reasons set forth above, this Court finds that Great Divide is liable under the principles of equity to reimburse Westchester for the defense costs it was ordered to pay to IMG in connection with the *Gastaldi* action.  Therefore, Great Divide's Motion for Summary

---

[14]

  IMG knew that Westchester had been assigned a contractual right of recovery for any defense costs it took on due to Great Divide's failure to provide a defense, yet expressly represented to Great Divide in the written settlement agreement that no such assignment had been made.

Judgment (ECF #202) is DENIED, and Westchester's Motion for Partial Summary Judgment

(ECF #200) is GRANTED.    Status remains set for September 1, 2015 at 9:00 a.m.

      IT IS SO ORDERED.


                            /s/ Donald C. Nugent
                            DONALD C. NUGENT
                            United States District Judge

DATED:   August 28, 2015