IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IMG WORLDWIDE, INC., *et al.*, | ) | CASE NO. 1:11 CV 1594 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This case is before the Court once again on the Motion of Great Divide Insurance Company For Reconsideration and Vacation in Part of the Court's August 28, 2105 Memorandum Opinion and Order. (ECF #210). This motion was supported by a Memorandum in Support and the Affidavit of Theodore M. Dunn Jr.. (ECF #210-1, 210-2). In it's Response to the motion for reconsideration, Westchester Fire Insurance Company ("Westchester") included its own cross-motion to dismiss defenses and counterclaims. (ECF #211, 212). Both issues have been fully briefed and are ready for disposition. (ECF #211, 212, 214, 215).

Great Divide Insurance Company ("Great Divide") argues that the Court's ruling, which held that Westchester is entitled to equitable indemnity from Great Divide, was premature, and that Great Divide was entitled to discovery and an evidentiary hearing prior to any final ruling

on the issue. In support of this position, Great Divide cites to the minutes from prior status conferences, supposedly memorializing their right to discovery, and to their opposition to Westchester's request for partial summary judgment reiterating their belief that they are entitled to discovery and a hearing on disputed factual issues relating to their defenses.

The status conference notes of March 30, 3015 indicate that the Court stayed discovery pending a ruling on motions for partial summary judgment which were anticipated to be filed with respect to "the legal effect of settlement between Great Divide and IMG." (ECF #198). The parties filed motions for summary judgment which went beyond this limited question. Both parties briefed not only the potential preclusive effect of the settlement, but also the viability of the various equitable remedies sought by Westchester. Following briefing, but prior to the issuance of this Court's opinion, the Court held another status conference during which it questioned whether the parties anticipated that the summary judgment motions would fully resolve the matter, as it appeared to the Court that they would. As indicated in the status minutes, the parties stated their belief that if recovery was allowed additional discovery would be required prior to the issuance of a final judgment. (ECF #207). This was not a ruling or finding by the Court, and was simply a memorialization of the parties' representations as to their understanding of the issues prior to the issuance of the Court's opinion on the summary judgment motions.[1]

Following the completion of briefing, the Court found that Westchester was entitled to

---

[1] Indeed if the Court had made a different ruling on some of the other equitable causes of action, it is very possible that some discovery may have been warranted to determine contribution amounts or to quantify amounts attributable to an unjust enrichment claim.

equitable indemnity for the defense costs it had been ordered to pay to IMG in connection with the *Gastaldi* action. This decision was based on the applicable law, and the very specific circumstances of this case, including the contracts at issue, the undisputed facts and procedural history, and the binding rulings and findings of the Sixth Circuit Court of Appeals. The material facts considered by the Court were either established by the Sixth Circuit in their prior opinion remanding the case for consideration of the equitable claims, or were based on known facts undisputed by the parties.

Nothing in the discovery sought by Great Divide would be material to the Court's determination on the issue of Great Divide's liability to Westchester under a theory of equitable indemnity. There may well be undiscovered facts that could affect Great Divide's potential for recovery against IMG, if any such recovery is possible, and the Court pointed out some potential factual issues that could be relevant to that consideration.[2] However, those potentially disputed issues are not before the Court as part of this litigation, and were not decided by the Court in its opinion. The only determination that is currently relevant is whether Great Divide is liable to Westchester for the defense costs attributable to the *Gastaldi* litigation.

Great Divide's contract with IMG states that it has the "right and duty to defend the insured against any 'suit' seeking damages" for "property damage" to which their insurance

---

[2] The Court indicated that there may be some evidence of bad faith by IMG in the language of the IMG/Great Divide settlement because IMG represented that it had not assigned or transferred or purported to assigns or transfer any of the released rights in the agreement to a third party. This was stated in the settlement contract even though IMG had assigned those rights to Westchester via the granting of subrogation rights in the excess insurance policy. *See, Aetna Casualty & Surety Co. v. Hensgen*, 22 Ohio St. 2d 83. This statement was not the basis for the Court's finding that Great Divide was liable to Westchester for equitable indemnity, but was only meant to raise the possibility that Great Divide could have a potential claim against IMG in a separate action.

applies.  The Sixth Circuit held that the *Gastaldi* action was a suit seeking damages for "property damage" and that Great Divide "wrongly" or "improperly" denied coverage.  (ECF #169, pgs. 13-15).   It further found that under the terms of its insurance policy, Great Divide is responsible for defending IMG in covered lawsuits.  (ECF #169, pg. 3).  This Court is bound by the Sixth Circuit's opinion.  Further, the settlement agreement between IMG and Great Divide acknowledges that the *Gastaldi* settlement included "payment of sums that IMG[] became legally obligated to pay" and that the Agreement exhausted the Great Divide policy "due to a payment for 'property damage' caused by an 'occurrence' under the Policy."  (ECF #146-2 at 1, 3 ).³  Great Divide's contract with IMG also makes clear that its duty to defend ends only when it has used up the applicable limit of insurance in the payment of judgments or settlement.  This did not occur until after all of IMG's defense costs had already been incurred.²

      Under the terms of Westchester's contract with IMG, Westchester was an excess carrier and it's duty to defend was secondary to Great Divide's duty to defend.  Great Divide has not disputed or otherwise challenged these basic facts and conclusions.   No further discovery has been suggested that would be aimed at discrediting or disputing these facts.   These facts conclusively establish that Great Divide was primarily liable for the defense costs associated with the *Gastaldi* action.  Further, there has been no argument that if Great Divide had paid the defense costs incurred prior to making the payment that exhausted its liability coverage in

---

³

An insurer/insured's agreement that policy limits were exhausted is presumptive, if not conclusive, evidence that there was coverage under the settled policy. *Elliott Co. v. Liberty Mut. Ins. Co.*, 434 F.Supp.2d 483, 499-500 (N.D. Ohio 2006).

connection with the "*Gastaldi*" action, Westchester would not have had any legal liability for payment of defense costs.

"It is well settled that one secondarily liable, who is forced to pay because of the refusal, or failure after demand, of the one primarily liable to discharge the obligation, has the right of indemnity from the one primarily liable." *Aetna Cas. & Sur. Co. V. Buckeye Union Cas. Co.*, 157 Ohio St. 385, 393 (1952), 105 N.E.2d 568, 572, citing *Globe Indemnity Co. v. Schmitt*, 142 Ohio St. 595, 53 N. E. (2d), 790; *Maryland Casualty Co. v. Frederick Co.*, 142 Ohio St., 605, 53 N. E. (2d), 795; *Losito v. Kruse, Jr.*, 136 Ohio St., 183, 24 N. E. (2d), 705, 126 A. L. R., 1194; *Herron v. City of Youngstown*, 136 Ohio St., 190, 24 N. E. (2d), 708. Further, there are several additional cases that hold that a settlement between an insured and a primary carrier should not alter the liability of the excess carrier. In other words, an excess carrier should be placed in the same position it would have been in absent any settlement between the insured and the primary carrier. *See, e.g., One Beacon america Ins. Co. v. American Motorist Ins. Co.*, 679 F.3d 456 (6th Cir. 2012); *Bondex Int'l Inc. v. Hartford Acc. And Indemn. Co.*, 2007 WL 405938, *5 (N.D. Ohio, Feb. 1, 2007). While, for the reasons outlined in this Court's prior opinions, it would have been more proper and more equitable to accomplish this directive by disallowing IMG's request for defense costs from Westchester, the Sixth Circuit precluded this result. Therefore, the only remaining solution that comports with Ohio law, and the law of the case as set forth in the Court of Appeals' decision is to allow Westchester to recover the costs from the primary insurer, Great Divide, and to allow the primary insurer to explore any claim it may have under the terms of its settlement agreement with IMG in a different action. Therefore, based on the established undisputed facts, the findings of the Court of Appeals, and the current state of the law in Ohio,

Great Divide is liable to Westchester for the full amount of the defense costs under the principle of equitable indemnity.

Great Divide raises several affirmative defenses, all of which are either belied by the conclusively established facts, or are unsupported by the law. Westchester has moved to strike these defenses. (ECF # 211). That motion is denied; it is not necessary to strike the defenses though they are not effective in preventing Great Divide's liability, under the circumstances of this case. The Sixth Circuit has found that the issue of Westchester's right to equitable relief against Great Divide was properly raised and preserved and that the Court should rule on the merits of that claim. Great Divide's various arguments relating to allegedly improper notice or untimeliness of the equitable claims fail based on the undisputed evidence already before the Court. No discovery is needed to address these issues.

There is no dispute that Great Divide was notified by IMG of the underlying *Gastaldi* lawsuit, including the amount of the defense costs incurred long before any lawsuit was brought against Westchester for coverage. Great Divide had every opportunity to challenge coverage, responsibility for defense costs, and the amounts associated with those liabilities. They, in fact, settled those issues indicating that they were exhausting their coverage for property damage under their policy and contributed some defense costs. The only notification and right to participate requirements discussed in the cases cited by Great Divide relate to notice of and participation in the underlying action giving rise to coverage, which in this case would be the *Gastaldi* action. There are no cited cases that say a primary carrier has the right to participate in the litigation or settlement discussions between an insured and an excess carrier with respect to the coverage provided by the excess carrier. Further, Westchester correctly points out that a

claim for indemnity does not arise until the indemnified liability is assessed. In this case that did not occur until the Sixth Circuit assessed liability against Westchester for defense costs. Westchester timely attempted to file a claim against Great Divide even prior to the assessment of costs. This Court denied the attempt as moot because it did not assess any costs against Westchester. When the Sixth Circuit reversed this decision, Westchester timely filed its third-party complaint seeking equitable relief and Great Divide was officially added to the action.

In fact, even before any claim for indemnity was triggered, Great Divide was an active participant in the case. They were fully involved in the briefing and arguments made at the Court of Appeals and had every opportunity to advance their own position prior to any assessment of defense costs against Westchester. No discovery is needed for this Court to determine that Westchester timely raised its claims for equitable relief against Great Divide; that Great Divide was fully aware of and was permitted to participate in the underlying *Gastaldi* action; or, that, as a matter of law, Great Divide was not entitled to any right of participation in Westchester's litigation with IMG over the coverage provided in its excess insurance policy.

Great Divide's defenses challenging the balance of equities at stake are equally unavailing, and do not require additional discovery. This Court has already found that Westchester's denial of benefits and failure to provide defense costs was done in good faith. The Sixth Circuit, noting this determination, found it irrelevant to the defense costs issue but did not overturn the finding. Further, Great Divide also originally denied coverage, and it had the primary duty to pay those costs, so it cannot now be heard to argue that failure to pay by a secondary is somehow worse than a failure to pay by the primary. Great Divide's eventual settlement does not change this fact. Westchester cannot be penalized for pursuing a good faith

-7-

challenge, and Great Divide cannot be additionally rewarded for making a business decision to settle a claim for less than its full value. As this Court has made clear in its opinion, Great Divide suffers an inequity through this decision, which was forced by the Court of Appeals opinion summarily eliminating any set-off or other adjustment to the defense costs based on IMG's actions and agreements. However, as previously explained, because of the Court of Appeals' decision, this Court may only consider the balance of equities as between Great Divide and Westchester. As set forth above and in the prior opinion, those equities clearly fall in favor of Westchester, and none of the requested discovery is aimed at challenging the basis of that decision.

Finally, although, the motion to reconsider does not ask the Court to change its opinion on the potential preclusive effect of the settlement agreement between Great Divide and IMG, it challenges the Court's holding on the equitable indemnity claim because the Court mentioned potential bad faith on the part of IMG when determining that the settlement agreement is not binding as against Westchester. A finding of bad faith by IMG or Great Divide in their settlement agreement is not necessary to the Court's determination. The Court cited *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 69-70, 567 N.E.2d 1291, 1302 (1991), for the proposition that a settlement agreement is enforceable absent evidence of collusion or bad faith to the detriment of the non-settling party. However, the Court also stated that the settlement agreement can only be enforceable as between the contracting parties. Westchester was not a party to the contract and cannot be held to its terms. Further, even if a showing of collusion or bad faith to the detriment of the non-settling party was required, the evidence currently before the Court is sufficient to show that IMG's settlement contract amounted to bad faith vis a vis Westchester as it

unilaterally terminated Westchester's contractual subrogation rights by entering into the settlement agreement with Great Divide. IMG has clearly shown that at the time it entered into the settlement agreement, it had no intention of accepting Great Divide's $250,000.00 contribution to its defense costs in full satisfaction of Great Divide's liability (which, as set forth above, equaled the full amount of the defense cost totaling nearly eight million dollars). Instead, having eliminated Westchester's right of subrogation, it immediately and continuously pursued Westchester for the remaining defense costs. This on it face is evidence of IMG's bad faith vis a vis Westchester. There is no allegation that Westchester consented to the release of its subrogated rights, and there is no evidence sought in discovery that would alter this conclusion, in the absence of such an allegation. Any issue of bad faith as between IMG and Great Divide is not relevant to the settlement's effect on Westchester and is not an issue that is material to the Court's decision on the issue of indemnity.

Following briefing on the Motion for Reconsideration, Great Divide filed a Motion for Clarification of the court's October 20, 2015 Minute Order challenging the Court's ability to assess damages, even in case of a liability finding, without further discovery.[3] There is, however, nothing material remaining to be discovered. The amount of defense costs has been stipulated to be $8,246,655.57. Because IMG recovered $250,000.00 in its original settlement with Great Divide, the judgment amount against Westchester was $7,996,655.57, plus pre-judgment interest of $1,160,629.09 through the date of the Sixth Circuit mandate, with a daily

---

[3] That motion has been denied. The status minutes were clear on their face and the arguments raised within the motion were not directed at clarifying the order, but were an additional attempt to argue their motion for reconsideration and delay the entry of a final judgment in this action.

-9-

amount to be assessed thereafter until judgment was entered or the liability was paid.

There was a statement of undisputed facts filed by Westchester in connection with its Motion for Summary Judgment indicating that it had paid IMG the full amount of defense costs plus pre-judgment interest of $1,160,629.09 on or about September 15, 2014. (ECF #201). Great Divide did not dispute or otherwise challenge this statement in any of its subsequent filings. In their joint motion for entry of amended final judgment, IMG and Westchester indicated that the judgment was paid by stating "after entry [of the amended final judgment] IMG intends to file a Satisfaction of Judgment." (ECF # 172). Though Great Divide is asking the Court to put Westchester to the proof of their payment, they have submitted signed court filings indicating the payments have been made, and Great Divide has offered no evidence or argument that would bring this fact into question. Further, they have cited no cases that would indicate that a valid enforceable judgment is an insufficient basis upon which to bring an indemnity claim. Whether or not they have fully satisfied the judgment, Westchester had a valid and enforceable judgment entered against it in the above stated amount. There is, therefore, no legitimate factual dispute as to the amount of damages at issue in the third-party complaint and no additional discovery is needed.

For the reasons set forth above, Great Divide's Motion for Reconsideration is denied. Great Divide is liable to Westchester for $7,996,655.57 plus the $1,160,629.09 in pre-judgment interest that Westchester was assessed for the time period prior to the date of the mandate issued by the Sixth Circuit Court of Appeals. This totals $9,157,284.66.   IT IS SO ORDERED.

    /s/ Donald C. Nugent  
DONALD C. NUGENT  
Date:   October 26, 2015   United States District Judge